IN THE UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

JAMES PATRICK DONOGHUE

    PLAINTIFF

      V

NATIONAL ARCHIVES AND

RECORDS ADMINISTRATION

CENTRAL INTELLIGENCE AGENCY

et al

    DEFENDANTS

Case: 1:23-cv-00157
Assigned To : Unassigned
Assign. Date : 1/17/2023
Description: FOIA/Privacy Act (I-DECK)

## MOTION FOR VAUGHN INDEX

Comes now James Patrick Donoghue pro se (hereinafter Donoghue) in the above styled cause and sumits to this Honorable Court his Motion For A Vaughn Index against the named Defendant parties,, submitting the following in support thereof;

### STATEMENT OF FACTS

1) In August 2007 Donoghue was arrested fron nine (9) alleged offenses being placed in the Baldwin County Alabama Jail.

2) In early August 2008 while incarcerated in the Baldwin County Jail awaiting finl disposition of the pending charges. Donoghue was advised to call his appointed attorney Derek Rose regarding his case. (In his telephone call attorney Rose informed Donoghue that he had spoken with the Assistant District Attorney assigned to his case. That he had been informed that while the District Attorney's office was not locked into a plea deal. "They were looking at giving Donoghue a sweetheart deal."



1

3) Attorney Rose proceeded to tell Donoghue that the Assistant District Attorney stated "...that they were looking at dismising all of Donoghue's charges and maybe convicting him of a single Misdemeanor with time served. But, if Donoghue caused any problems in the County Jail, fighting and so forth, they might dismiss all charges, knock it down to a Class C Felony. Give Donoghue time served, put him on maybe two years unsupervised probation. That they would have Donoghue then pay two-three months fees when he left the Countyt Jail. That they would have a date set for him to return in two or three months and the remaibnder would be suspended."

4) When Donoghue asked why, attorney Rose stated "The D.A. told him that all these charges against Donoghue were pure B.S.. Donoghue then asked attorney Rose "...if they are all B.S., then why are they going to stick me with something like a Misdemeanor?". Attorney Rose stated, "he asked the D.A, the same thing and he told me that;

"They were familiar with Donoghue there. They knew him. They knew Donoghue lost everything he owned, his house, his vehicle. That they knew that he didn't any longer even own a toothbrush to his name. They knew that if they released Donoghue with no charges, that Donoghue would sue them and wind up with a hell of a lot more than he ever lost. They knew he would do that to them, so they were going to have to stick him with something. So tell Donighue just sit back and relax, they were probably no going to do anything until November or December at the earliest and probably would not do anything until February or March."

5) Approximately two weeks later in August 2008, Donoghue, with approximately 25 other inmates went to the Baldwin County Circuit Court for a docket hearing before Judge Joe Reid. Upon arrival in the courtroom Donoghue's attorney Derek Rose was waiting for him. Attorney Rose told Correctional Officer Sgt. Berry that "...he needed to talk to Donoghue." Attorney Rose then took Donoghue to the jury box which was approximately 8-10 feet from the Prosecutor's table where the followng conversation ensued.

6) Attorney Rose who was nervous and upset told Donoghue that a "plea deal" had been offered in his case. That this deal "...was not any kind of a plea deal." He stated that "The dat before right before he left his office he received a telephone call from the Assistant District Attorney who told him "that he needed to be at the Courthouse at 6:00 a.m. sharp the next morning." He asked the Assistant District Attornet why because they didn't even open the Courthouse then. Then he was told "don't worry about that, you need to be there and he would be waiting for him. That it concerned his client Donoghue, He needed to know who his client really was and what he was."

7) Attorney Rose then stated, "That when he got there the Assistant District Attorney was wainting outside and took him inside to a room where there were two federal agents waiting for him. They showed him a file telling hin that it was a composite file from several different Federal Agencies concerning investigations of Donoghue."

8) At that point Attorney Rose pointed to the prosecutors table where the Assistant District Attorney was standing watching. On the table was a large manilla folder approximatley 3½ to 4½ inches thick. There was no agency logo on the folder, but it was stamped in large bold red letters on the front cover "DO NOT COPY" and the same in two places on the side of the folder in smaller bold red letters. The Assistant District Attorney tapped the cover while looking at Donoghue and flipped it open.

Donoghue could not read the contents at that distance. But hecould see that there were typed forms, some documents that were handwriten. At the bottom of the documents attached to the inside cover, were some mimeographed sheets, some of the other documents where yellowed on the edges from age. On the top of the inside cover was a small yellow legal pad with handwritten notes.

9) Attorney Rose then told Donoghue that the two federal agents stated
    "these (records) concerned investigations of Donoghue that
    went back to when he was about 17 years old. That the first
    thing he was to tell Donoghue was that no one in the State
    asked for or requested these documents. They brought them down
    here on their own." That Attorney Rose was to "read these,
    this is your client Donoghue..."

   Attorney Rose then stated that when he finished reading the
documents, he told the agents that they has a problem, that "some of
these go back to when Donoghue was about 17 years old, that they had
never arrested Donoghue for any of this." That the two agents replied
"That doesn't matter." That the agents then stated "Donoghue is going
to get three consecutive lifes without parole."

   Attorney Rose stated he then told them, "You can't give his that,
he's a first time offender. That's an illegal sentence." Then the
agents replied, "That's all right, we showed this to the District
Attorney and his judge yesterday and they agreed. You need to tell
Donoghue that if he ever fights us over this, three lifes without
parole will be the least of his problem. We'll show him ..."

10) Attorney Rose then told Donoghue "... this is not any kind of
a plea deal. but, is you submit a blind plea. You know that I get
along really well with the judge, wwe Bar-B-Q together go fishing
together, we're very good friends. You know that I've gotten guys in
the past to do blind pleas, and instead of life sentences, I've gotten
them terms of years instead. If you'll do a blind plea today. I will
talk to the judge and maybe I can get you something in years, because
what they're doing here is not any type of deal.

Donoghue knew of several individuals in the County Jail who did submit blind pleas and attorney Rose got them terms of 15-20 years instead. So Donoghue agreed because he knew how the Court's in Baldwin County Alabama worked and that he could not fight them, the federal agents, in the county.

11) It is critical to note that when Donoghue asked his defense counsel Derek Rose who the two federal agents were and what agency they were with, and what the documents they brought referred to, attorney Rose stated "I'm not allowed to tell you that, I can't." Donoghue was not allowed to be informed as to what the allegations referred to in these record/documents, or the name of the agencies who contributed the records and documents to the composite "DO NOT COPY" file.

Donoghue was placed in the position of knowing that the Ba;dwin County Alabama court officials had agreed to do as the federal agents stated. That these same Baldwin County officials were going to convict and sentence him as requested, no matter what he did. Donoghue entered the blind plea as attorney Rose suggested, under the threats and coercion that occurred.

12) Approximately 30 days later at the end of September 2008, Donoghue went to court for his sentencing hearing. The "alleged victim" made her victim impact statement which consssted of her reading a poem she had written. The Assistant District Attorney then requested that the trial court, Judge Reid, to sentence Donoghue to three (3) life sentences". Absent any specific order to the contrary, these sentences would have been with parole eligibility.

13) Attorney Rose, Donoghue's defense counsel, then gave the Defense's statement which consisted of the following, in it's entirety.

5

"Your Honor, one day we all have to stand before that ultimate judge and be held accountable for all that we've done". At that point turning and pointing at Donoghue and stating in a loud, harsh voice, "And this man, Donoghue, will have to answer for everything he's ever done in his life." Attorney Rose then sat down.

14) Donoghue leaned over and looked to where the Assistant District Attorney was sitting who was looking at Doonghue. The Assistant District Attorney lifted his palms and mouthed the words "What the F---?). He then stood up and addressed the Court stating;

"Your Honor, I know that this is highly unusual, usually at this point the State has it's say, and then the Defense has it's say. The Defense gets the last say. However your Honor, before you pass sentence in this case, there are some very important facts, that this court may not be aware of in this case. And I think that this court should be made aware of before this court inposes senrence. So, if this court and the defense has no obejections the State would like to make this court aware, these facts are critical for this court to know before it passes sentence."

The court replied, "This is unusual, however if the Defense doesn't have a problem, then this court does not have a problem with this.

Attornet Derek Rose stated, "Go for it."

15) The Assistant District Attorney the proceeded to state to the Court:

"...normally when this type of claim is made, DHR (Department of Human Resources) are first notified, then law enforcement, and then our office (District Attorney) is the last to be notified. However, because this involved Mr. Donoghue, (pointing to Donoghue) and we know Mr. Donoghue. Our office was first notified of this complaint. I then made arrangements with DHR and the Detectives, and myself and my assistant. To meet with the two representatives from DHR and the two Detectives and for all six of us to go together to where this alleged victim was located to interview her."

"We interviewed this alleged victim for five straight hours without stopping. We effectively tagged teamed her, at times myself and my assistant would question her, then either the two representatives from DHR, or the two Detectives would step in. At times all six of us were in there at the same time

6

questioning this alleged victim. Throughout out the entire five hours, this alleged victim never said anything. Even when we asked her, her name, she just looked at us, she never said a word. The entire time we questioned this alleged victim, she never said anything. Then at one point in response to a question one of us asked her. I don't recall who asked it or even what the question was. This alleged victim shook her head, it was either yes or no. From that point on in respone to any question asked, this alleged victim shook her head either yes or no."

"Since then I have kept in continuous contact with her family and friends. Over the past year, I have asked them repeatedly if this alleged victim ever said anything to anyone about the reasom we are here today. Even this mornning in the hallway before we came into court. I asked them is she has ever said a single word to anyone about this. They all said the same thing, that she has never said anything to anyone about this, that anything ever happened."

"Even today, when she made her statement to the court she read a poem she had written, that had nothing to do whatsoever with why we are here today. I think it is very important for this court to know this before it passes sentence,, and that State would like to amend its request, that Mr. Donoghue is only to be sentenced to one life sentence."

At that point the District Attorney sat down. Judge James Reid of the Baldwin County Circuit Court then proceeded to sentence Donoghue to three (3) consecutive life sentences, two (2) concurrent life sentences, three (3) concurrent twenty (20) year sentences and one concurrent ten (10) year sentence. In Alabama, consecutive life sentences are in reality Life Without Parole sentences. These sentences as originally imposed, by order of the Court, were with parole eligibility.

16) In or about late 2009, early 2010 Donoghue began filing requests under the Freedom of Information Act 28 U.S.C. §552 and Privacy Act 28 U.S.C. §552a, seeking information and records concerning himself

---

* In Alabama the only proof required in these cases is that the victim just has to say it happened. There is no other requirement as to any other evidence. Only a verbal "say so."

with various Federal Agencies. Im each request Donoghue specified the incident of disclosure in the Baldwin County Circuit Court of the contents of the "DO NOT COPY" file and the incident involving Cube in or about 1980.

17. However, when Donoghue filed with the Office of the Director of National Intelligence in 2017-2018 under the FOIA and PA. He then received approximately 2-3 weeks later, on March 16,2018 a notice from the Alabama Board of Pardons and Paroles that he was now barred from parole. Thus, Donoghue has no parole eligibilty and his Life Sentences are now Life Without Parole. Regardless that when Donoghue was sentenced by the trial court, that his senmtences were with parole eligibility.

18. Donoghue's purpose for attempting to obtain the records and documents he sought. Would enable him to be able to challenge the actions which he was subjected to in the Baldwin County Alabama Circuit Court in or about August-September 2008. These records and documents would enable him to be able meaningfully exercise his First Amendment substantive right to petition for redress of grievances, through his right of access to the courts as of right.

However, as shown in the following, the Defendants have refused to respond to the primary fact in all prior requests, in that not one single Defendant has ever stated that they did not have any involvement in the incident that transpired in Baldwin County Alabama Circuit Court in August-September 2008.

The Defendant partis came to an agreemént on the object and course of action to be taken to accomplish their objective. Which through the disclosure of the information contained within the composite file. Would as a consequence Donoghue would be imprisoned for the remainder of his natural life. That such actions knowingly constituted multiple unlawful, overt unconstitutional actions. That the proximate result would be the subversion of Donoghue's substantive, fundamental righst inherent in the Bill of Rights and promulgated into the United States Constitution.

## STANDARD OF REVIEW

Donoghue asserts under the particular facts, circumstances and the history of the issues presented that the proper Standard of Review would be pursuant to this Court's holding in Allen v CIA 636 F.2d 1287, 1298-99 (D.C.Cir.1980) to wit:

> "... relevant factors whether to conduct an in camera inspection of withheld records (a) the number and length of documents at issue; (b) whether further public justification of the invocation of exemptions is inappropriate because such justification [] would reveal the very information sought to be proteced, (c) the existence and strength of evidence of bad faith on the part of the agency, (d) whether the contents of the documents are in dispute, (e) the agency's acquiescence in such proceedings, and, (f) the strength of the public interest in disclosure of the withheld materials particularly applicable when the question of whether the agency is properly serving its public function is involved."

## ARGUMENT

Donoghue argues that there is not in any of the prior responses of the defendant parties to his requests for information, records and/or documents pursuant to the Freedom of Information Act 5 U.S.C. §552 or the Privacy Act 5 U.S.C. §552a. Has there been any denial to any degree. Asserting that they did not contribute to or engage in the disclosure of the composite "DO NOT COPY" file that was disclosed to Baldwin County Alabama Circuit Court officials. Not has there ever been any assertion or statement by any of the defendant parties that the disclosure of the "DO NOT COPY" composite file did not occur in or about August 2008.

Donoghue argues that it could not e fairly held, as a matter of law that the search by the defendant parties regarding information, documents or records about Donoghue was adequate and/or conducted in good faith in response to his 5 U.S.C. §552 (FOIA), 5 U.S.C. §552a (PA) requests. The responses were vague, consisting merely the

citing of statutes, exemptions and preclusions. Showing that the defendants did not undertake a good faith effort to disclose ny information sought by Donoghue.

The only exception was the response by the National Archives and Records Administration (NARA) to the FOIA appeal by Donoghue in case NGC17-067a wherein Debra Steidel Wall Deputy Archivist of the United States stated:

> "Your administrative remedies are now exhausted. If you are dissatisfied with my action on your appeal the FOIA permits you to file lawsuit in federal district court in accordance with 5 USC §552(a)(4)(B). You may seek judicial review in the District of Columbia, in the United States District Court for the judicial district in which you reside or do business,, or the judicial district where the records are located - in this instance in the U.S. District Court of Maryland."

Donoghue argues that in response to his request to the Office of Government Information Services (OGIS) for mediation services concerning his FOIA/PA request to the Central Intelligence Agency. Which was received by the OGIS on January 3, 2017 and the response was dated October 16, 2017 - ten (10) months later (Re: Case No:201701103 NG:CL) signed by Nikki Gramian Deputy Director ,
it was stated in regards to the Glomar response:

> "In order for such disclosure to constitute an official acknowledgement, the information requested must already have been made public through an official and documented disclosure, in the arena of intelligence and foreign relations, there can be a critical difference between official and unofficial disclosures. Therefore one way to show that Glomart response is not proper is to provide evidence that an official of an agency has publicly and officially acknowledged a fact that would establish a basis for concluding that records about a subject exist (or existed).

Donoghue argues that whereas in all his prior requests pursuant to the FOIA?PA to the various federal agencies cited as defendant parties, he has been the subject of the records and documents sought. And in all of his prior requests Donoghue informed each party of the facts and circumstances of what transpired in Baldwin County Alabama Circuit Court in or about August - September 2008 due to the disclosure of the records/documents in the composite file.

The response to Donoghue's mediation by the OGIS regarding the CIA in case no:201701103, the CIA responded :

"FOIA provides for disclosure of many agency records. At the same time, Congress included in the FOIA nine exemptions from disclosure that provide protection for important interests such as national security, personal privacy, privileged communications, and certain law enforcement activities. In your case, the CIA cited FOIA exemptions 1 and 3, 5 U.S.C. §§552(a)(1) and (b)(3). FOIA exemption 1 protects from disclosure information that has been deemed classified pursuant to an Executive Order. Records exempt from release pursuant to Exemption 1 may cause harm to national security and are generally deemed properly classified. In the Exemption 1 context intelligence agencies often issue "Glomar" responsives to FOIA requests in which they refuse to confirm or deny whether responsive records exist. Courts have held that the agencies may refuse to confirm or deny he existence of records in cases in which answering the FOIA inquiry would result in a recognized harm under a FOIA exemption. In your case the CIA cited Executive Order (E.O.) 13526 which provides that agencies may issue Glomar responses "whenever the existence or nonexistence of the information itself is classified under this E.O. or its predecessors." (E.O. 13526 3.6(a)."

"Executive Order 13526 3.6(a) as allowing Glomar response (neither confirming nor denying0 Section 3.6(a) in 50 U.S.C.S. §3161 Chapter 44 - Access to Classified Information §3161 Procedure Sec. 3.6 - Processing Requests And Review Notwithstanding Section 4.1(i) of this order in response to request for information under the FOIA 5 USCS §552 the Presidential Records Act (44 USCS §2244(a)(1), the Privacy Act of 1974 (3 USCS §552(a)) or the mandatory review provisions of this order; (a) An agency may refuse to confirm or deny the existence of requested records."

It was further stated in the response:

"FOIA exemption 3 covers records that are specifically exempt from disclosure by other Federal statutes provided that such a statute affords the agency no discretion on disclosure, establishes particular criteria for withholding the information or refers to the particular types of material to be withheld. Exemption 3 establishes two categories of statutes - those that provide agencies with no discretion and those that provides agencies with some discretion by establishing particular criteria or referring to particular types of matters to be withheld, 5 U.S.C. §552(b)(3)(A) ; (B)"

> "In your case the CIA first pointed to the Central
> Intelligence Act of 1949, as amended which exempts the CIA
> from having to disclose its "organization, functions, names,
> official titles, salaries, or number of personnel employed by
> the Agency." 50 U.S.C. Sec.3507. The CIA also cited the
> National Security Act of 1947 as amended, which mandates that
> the Director of National Intelligence "protect intelligence
> sources and methods from unauthorized disclosure." 50 U.S.C.
> 3024(i)(1) as amended."

This cited response by the CIA was in regards to Donoghue's requests
for records and documents that would have been contained within the
composite "DO NOT COPY" filed that was disclosed to Baldwin County
Alabama Circuit Court officials, but was also in regard to any other
records and documents that the C.I.A. had in its possession where
Donoghue was the subject of investigations by the C.I.A.

In this response the CIA stated three times "In your case" and
cited ten (10) seperate exemptions to Donoghue's request claiming the
"Glomar" response. Donoghue argues that the "defining" statement of In
your case as to his request for records concerning himself qualifies
as an admission, public in nature. That the CIA does possess records
and documents of whom the subject is Donoghue. That these same records
and documens nsse the product of investigations of Donoghue by the CIA.
Whereas the CIA did violate the prohibition against the CIA
investigating American citizens at home by subjecting him to
surviellance and scrutiny.

This Court held in Weissman v Central Intelligence Agency 562 F.2d
692 (D.C.Cir.1977) that:

> "... The National Sercurity Act of 1947, which created the CIA
> and impowered it to correlate and evaluate intelligence
> relating to the national security, specifically provided that
> the "Agency shall have no police, subpoena, law enforcement
> powers, or internal security functions. 50 USC §403(d)(3).
> This directive was intended at the very least, to prohibit the
> CIA from conducting secret investigations of United States
> Citizens, in this country, who have no connection to the
> Agency."

12

"Congress assured that the Agency would be prevented from using its enormous and broad delegation of power to place United States citizens <u>living at home</u> under surveillance and scutiny."

"The Senate Select Committee To Studt Governmental Operations with Respect to Intelligence Activities (Church Committee) – By codifying the prohibition against police and internal security functions, Congress apparently felt that it has protected the American people from the possibility that the CIA might act in any way that would have an impact upon their rights."

"The provision which state ... the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods, from unauthorized disclosure. This provision <u>contains no grant of power</u> to conduct security investigations of unwitting American citizens."

Donoghue received a response from the CIA to his request for records and documents pursuant to 5 USC §552 and 5 USC §552a dated October 5, 2016 wherein the CIA stated in pertinent part as grounds for denial;

"...To the extent your requests also seeks records that would reveal a classified association between the CIA and yourself, we can neither confirm nor deny having such records pursuant to Section 3.5(a) of Executive Order as amended. If a classified association between you and the CIA were to exist, records revealing such a relationship would be properly classified and require continued safeguards against unauthorized disclosure. You may consider this finding a denial of this portion of your request pursuant to FOIA exemptions (b)(1) and (b)(3) and PA exemptions (j)(1) and (k)(1). Exemption (b)(3) pertains to information exempt from disclosure by statute. <u>In this case</u> the relevant statutes are Section 6 of the Central Intelligence Act of 1949, 50 USC §3507, as amended, and Section 102(i)(1) of the National Security Act of 1947, 50 USC §3024(i)(1) as amended."

Following Donoghue's Administrative Appeal the CIA responded June 27, 2017;

"The ARP (Agency Release Panel) upheld the initial action to neither confirm nor deny the existence or nonexistence of such records responsive to your request in accordance with Section 3.6(a) of Executive Order 13526. The fact of the existence or nonexistence of such records is itself currently and properly classified <u>and is intelligence sources and methods information</u> from disclosure by Section 6 of the CIA Act of 1949 and

Section 102A(i)(1) of the National Security Act of 1947. Therefore the appropriate FOIA exemptions are (b)(1) and (b)(3)and PA exemptions (j)(1) and (k)(1)."

As cited by the C.I.A. section 3.6(a) Executive Order 13526 as allowing Glomar Response, i.e., neither confirming nor denying responsive records or documents states:

"Section 3.6(a) of 50 U.S.C.S. §3161 Chapter 44 - ACCESS TO CLASSIFIED INFORMATION §3161 PROCEDURE Sec. 3.6 - PROCESSING REQUESTS AND REVIEWS NOTWITHSTANDING Section 4.1(i) of this order in response to a request for information under the FOIA (5 U.S.C. §552) the PRESIDENTIAL RECORDS ACT (44 U.S.C.S. §2255(c)(i), the PRIVACY ACT OF 1974 (5 U.S.C.S. §552a) or the mandatory review provisions of this order; (a) An agency may refuse to confirm or deny the existence of requested records."

FOIA (b)(1) exempts from disclosure information currently and properly classified pursuant to an Executive Order. FOIA (b)(3) exempts from disclosure information that Federal statute protects, provided that the other federal statute either recognizes that the matter be withheld or establishes particular criteria for withholding or refers to particular types of matters to be withheld. The (b)(3) statute upon which the C.I.A. relies includes, but are not limited to, the C.I.A. Act of 1949. (no discretion)

The response(s) by the C.I.A. go beyond the standard Glomar response. As the C.I.A. through their stated reliance on these statutes, exemptions as grounds, infers beyond reasonable dispute that in order to claim such statutes, exemptions. That there are in fact records and documents of which Donoghue is the subject matter. And the only reasonable manner by which the C.I.A. would in fact possess such records and documents . Would be that the C.I.A. did and has subjected Donoghue a citizen at home, to surviellance,scrutiny and investigation.

Donoghue argues that the records and documents sought were those that were included in the composite DO NOT COPY file to Baldwin County Circuit Court officials and agents in August 2008. Donoghue also sought records and documents that the C.I.A. possessed regarding

Donoghue other than those included in the composite file.

These responses by the C.I.A. are overly broad and vague and do not establish how these numerous statutes and exemptions apply to Donoghue They are not supported by any Affidavit by any agency official. They do not cite any system of files searched, the potential volume of records or comply with with any of the other requirements that an agency is required to provide a requestor seeking information that would be, or could be in the possession of an agency under the FOIA and or the PA.

Donoghue argues that in regards to the C.I.A.'s responses EXECUTIVE ORDER 13526 Sec. 1.7 CLASSIFICATION PROHIBITION AND LIMITATIONS is applicable and controlling in this instant case wherein it states:

"(a) In no case shall information be classified, continue to be maintained as classified or fail to be declassified in order to: (1) conceal violation of law or administrative error."

Therefore the defendant(s) could not fairly or reasonably continue to claim exemptions pursuant to one part of Executive Order 13526 in order to refuse to provide information disclosed as Donoghue states it was, the ignore Executive Order 13526 Sec. 1.7(a)(1). Additionally applicable to Donoghue's claims is §552(a)(k)(2) which states:

"Provided however that if any individual is denied any rights, privileges, or benefits that he would otherwise be entitled to by Federal Law, or for which he would otherwise eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source of furnished information to the Government..."

The usage and the context of the word 'shall' in §552(a)(k)(2) is in the imperative and the same serves as an order, a mandate leaving no discretion as to whether or not an agency wishes to comply.

15

As cited by the C.I.A. section 3.6(a) Executive Order 13526 as to allowing a Glomar Response i.e., neither confirming nor denying responsive records or documents exist states:

> "Section 3.6(a) of 50 U.S.C. §3161 Chapter 44 – ACCESS TO CLASSIFIED INFORMATION §3161 PROCEDURE Sec. 3.6 – PROCESSING REQUESTS AND REVIEWS NOTWITHSTANDING Section 4.1(i) of this order in response to a request for information undre the FOIA (5 U.S.C §552) the PRESIDENTIAL RECORDS ACT (44 U.S.C.S. §2255(c)(i), the PRIVACY ACT of 1974 (5 U.S.C.S. §552a) or the mandatory service provisionsof this order; (a) An agency may refuse to confirm or deny the existence of requested records."

FOIA(b)(1) exempts from disclosure information <u>currently and properly classified</u> pursuant to an Executive Order. FOIA(b)(3) exempts from disclosure information that Federal statute protects, provided that the other Federal statute either recognizes that the matter be withheld or establishes particular criteria for withholding or refers to particular tyoes of matters to be withheld. The (b)(3) statute upon which the C.I.A. relies includes, but are not limited to, the C.II.A. Act of 1949. (leaving no discretion).

These numerous exemptions as cited by the C.I.A. through their reliance on these numerous exemptions as grounds for denial, infers beyond reasonable dispute, that in order to make such claims. That there must first be, in fact, records and documents concerning Donoghue, who has been the subject of these requests and responses. And that the only reason that the C.I.A. would possess such records and documents. Would be that the C.I.A. did and has subjected Donoghue, a citizen, while at home, to surveillance, scrutiny and investigation.

Donoghue argues that the records and documents he has sought were those that were contained with the DO NOT COPY file to Baldwin County Alabama circuit court officials and agents in August 2008. However Donoghue also sought records and documents that the C.II.A. possessed regarding Donoghue other than those included in the DO NOT COPY composite file.

In his FOIA Appeal No:NGC17-067a wherein Debra Steidal Wall Deputy Archivist of the United States stated:

> "Your administrative remedies are now exhausted. If you are dissatisfied with my action on your appeal the FOIA permits you to file a lawsuit in the federal district court in accordance with 5 USC §552(a)(4)(B). You may seek judicial review in the District Court of Columbia, in the United States District Court for the judicial district in which you reside or do business, or the judicial district where the records are located, in this instance, in the U.S. District Court of Maryland."

Donoghue argues that in response to his request to the Officie of Government Information Services (OGIS) for mediation services cncering his FOIA/PA requests to the Central Intelligence Agency. Which was received by the OGIS on January 3, 2017 and the response was dated October 16, 2017 - ten (10) months later, (Re: Case No:201701103 NG:CL) signed by Nikki Gramium Deputy Director it was stated in regards to the Glomar Response:

> "In order for such disclosure to constitute an official acknowledgement, the information requested must already have been made through an official and documented disclosure; in the arena of intelligence and foreign relations, there can be a critical difference between official and unofficial disclosures. Therefore, one way to show that Glomar response is not proper is to provide evidence that an official of an agency has publicly and officially acknowledged a fact that would establish a basis for concluding that records about a subject exist (or existed)."

Donoghue argues that he has been the subject of his requests to the various Federal agencies cited as defendant parties, of the records and documents in possession of these defendant parties, as he was the subject of the request in FOIA Appeal NGC17-067a. And the response by Debra Steidal Wall Deputy Archivist of the United States is that of an official of an agency. Her statememt advising Donoghue where the records Donoghue sought regarding himself and the incident which transpired in August 2008, are in fact located in Maryland is a public statement and acknowledgement of the fact that records concerning Donoghue, the subject, do exist.

Regarding the request for information Donoghue submitted to the National Archives and Records Agency for information pursuant to FOIA §552 and the PA §552 seeking records/documents the NARA may have in their possession regarding Donoghue. His request concerned the following NARA System(s) - Records Group(s) to be searched. NARA 3 - Donors of Historical Material Files; NARA 7 - Classified Documents Request Files; NARA 8 - Restricted and Classified Records Access Authorization Files; NARA 35 - Case Management and Reporting Systems.

In this request, Donoghue also informed the NARA that in a prior request pursuant to the FOIA/PA to the NATA in case no: NGC 17-067a. The NARA informed Donoghue

"... You may seek judicial review in the District Court of Columbia. In the United States District Court for the judicial district in which you reside or do business, or in the judicial district where the records or located - in this instance, in the U.S. District Court of Maryland."

Donoghue informed the NARA that in their reponse they neglected/failed to inform him as to the mailing address for the facility or facility's where these records are located in Maryland. The name of the Agency, Bureau, Diviosion and/or office that would possess, control or maintain these records, "in this instance". The designation(s), if known, of any indices, or system, files, record groups which would assist Donoghue in having his request processed under the FOIA/PA. Requesting that the NARA was to provide him any and all such information requested concerning the records located in Maryland. _____ ached hereto dated April 25, 2022.

Donoghue recieved a response to this request from the Office of Inspector General wherein he was properly informed as to the responsibilities and duties of that office. In this response the O.I.G. also informed Donoghue that the NARA would be responding to his FOIA PA request. Regarding the System(s) - Records Group(s).

On August 19,2022 Donoghue filed an Administrative Appeal to the Deputy Archivist for the NARA - Tracking Number 67787. Wherein Donoghue informed the NARA that (1) He had never received a response to his prior request(s) regarding the information as to the records stored in the State of Maryland, nor has he ever received any response to his request regarding the NARA Systems - Records Groups he had previously cited.

And, that in his initial request of April 25, 2022, that he had provided a Certification of Identity specifiying his Date of Birth - Social Security Number in order to subtantiate that the records/documents he sought were in regards to himself. That in response the NARA provided him a copy of a file/record regarding a James Donoghue dated August 5, 1960. Donoghue in his appeal once again informed the NARA that he was born April 24, 1954 and that at the time of that investigation it regarded some other James Donoghue, for he was only six (6) years old when this other individual was investigated. In his appeal Donoghue also attached another Certification of Identity.

The NARA has never notified Donoghue as to any reason why they have failed or refused to respond to his request pursuant to 5 U.S.C. §552 and/or 5 U.S.C. §552a. The response by the NARA as to Donoghue's records (in this instance) being stored in the State of Maryland, is an admission by an official of an Agency, that in fact there are records regarding Donoghue. These records, as of the date of this filing, would be still in the possession and control of some unknown agency, in the State of Maryland.

Donoghue, as a lay man, has no knowledge as to what agency, or agencies he may possibly contact that would have these records. As there are literally numerous federal agencies, bureaus, divisions with offices and facility's in the State of Maryland. Without the NARA providing the information as to where his records are stored. Donoghue has no ability to pursue his claims.

Donoghue asserts that these same documents, records would likely concern or involve the time period of his alleged association with his Grandfather's, George Lanno Donoghue, A.K.A. (Tricky) and his alleged associates. Whereas when Donoghue was around seventeen (17) years old, he allegedly engaged in certain actions at their request.

Donoghue would argue that whereas the C.I.A. stated regarding the information sought "... is intelligence sources" and or "methods". Such "sources" and or "methods' should have and could still be "redacted" as to their identification from the records and documents sought. Additionally, the names of the Baldwin County Alabama Circuit Court officials, agents, to which this information was disclosed, do not constitute a "source" or "method",for the purposes of §552(a)(k)(2).

Any allegations involving Donoghue, which as of this current date are now approximately fifty (50) years old. The date of disclosure in August 2008, these same allegations when Donoghue was around seventeen (17) years old, would have been thirty-seven (37) years old, which were within the DO NOT COPY file. The allegations would not constitute a "source or method". Thus the Defendants should have and would be required to disclose said information, absent sources and methods, to Donoghue.

## FEDERAL BUREAU OF INVESTIGATION

Donoghue had filed a request for information with the F.B.I. pursuant to the Freedom of Information Act (F.O.I.A.) §552 and the Privacy Act (PA) §552a seeking a copy of the non-disclosure agreement regarding the disclosure of the DO NOT COPY file by Federal Agents to Baldwin County Alabama Circuit Court officials, agents in or about August 2008. In his request, Donoghue specifically informed the F.B.I. that he was not seeking copies of any of the records or documents that would have been contained within the DO NOT COPY file, regarding any prior investigations of Donoghue. Only a copy of the non-disclosure

agreement. Whereas this document would substantially establish that the disclosure did in fact occur in August 2008.

Donogue had filed a prior action in the United States District Court for the District of Columbia case no: CV-13-0526 (RBW) seeking a VAUGHN INDEX, seeking copies of the records, documents in the DO NOT COPY file disclosed to Baldwin County Alabama Circuit Court officials, agents. In this prior action the F.B.I. cited numerous exemptions, statutes and preclusions to deny Donoghue the records, documents he sought.

In this prior case, one of the grounds the F.B.I. relied upon to deny Donoghue, was that Donoghue had never sought a copy of his N.C.I.C. "Rap Sheet". Stating that the F.B.I. would neither "confirm nor deny" (Glomar response" that Donoghue had a "Rap Sheet". The F.B.I. also claimed as a defense citing 28 C.F.R. §16.96 - letters rogatory, courts of foreign jurisdiction." That Donoghue had no right to a copy of his "Rap Sheet" under either the FOIA or PA.

In that case the District Judge of the District of Columbia in his Order denying Donoghue any relief, cited only one ground stating that because Donoghue had failed to obtain a copy of his Rap Sheet, he was denying Donoghue's action. The District Court Judge for the District of Columbia also stated that he would not address the merits of any of the other exemptions cited by the parties.

In the prior case Donoghue had sought a copy of a "transfer log" as to the DO NOT COPY file being taken and shown to the officials in Baldwin County Alabama in August 2008. Donoghue did not seek a copy of the non-disclosure agreement.

Donoghue recently filed an FOIA, PA request to the F.B.I. seeking a copy of the non-disclosure agreement. In response the F.B.I. cited §552(a)(b)(6) and §552(a)(b)(7), "personal and medical records which would constitute an unwarranted invasion of privacy" as grounds for denial.

21

In the prior case the F.B.I. never cited or relied upon
§552(a)(b)(6) or §552(a)(b)(7) as a defense. Therefore Donoghue
asserts and argues that whereas this exemption, statute was never an
issue or a defense in the prior case, the principle of Res Judicata
does not apply in this instant case, to the issue of a copy of the non
disclosure agreement.

In <u>Brownback v King</u> 209L.Ed.2d 33 the Court held:

"The terms res judicata and claims preclusion often are used
interchangeably. But res judicata comprises two distinct
doctrines. The first is issue preclusion, also known as
collateral estoppel. It precludes a party from relitigating an
issue <u>actually decided</u> in a prior case and necessary to the
judgment. The second doctrine is claim preclusion, sometimes
itself called res judicata. Claim preclusion prevents parties
from relitigating the <u>same claim</u> or <u>cause of action</u>, even if
certain issues were not litigated in the prior action. Suits
involved the same claim or cause of action if the later suit
arises from the same transaction or involves a common nucleus
of operative facts."

Senate K 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001): <u>Taylor v
Stargell</u> 171 L.Ed.2d 155 The "term judgment on the merits has
gradually undergone change and now encompasses some judgments
that do not pass upon the substantive merits of a claim and
hencedo not (in many jurisdictions) entail claim preclusion
effect."

"Issue preclusion, in contrast to claim preclusion, bars
successive litigation of an issue of fact or law actually
litigated <u>and resolved in a valid court determination
essential</u> to the prior judgment, even if the issue occurs in
the context of a different claim. By precluding parties from
contesting matters that they had a full and fair opportunity
to litigate..."

The F.B.I. made the claim that this particular request concerned
"third partys" as a defense, this claim is erroneousand misplaced. A
third party is a person who <u>is not a party</u> to a lawsuit, agreement, or
other transaction but who is usually somehow implicated in it; someone
<u>other</u> than the principal parties-also termed outside party.

Under the particular facts of this instant case, Judge Reid (retired), former Baldwin County District Attorney Judy Newcombe, the former assistant District Attorney assigned to Donoghue's state case, and his former defense counsel Derek Rose, are partys to the transaction that occured in Baldwin County Alabama in August-September 2008. They are principal partys to this action. Playing a role irrefutably establishing them as party to this instant case. The federal agents who disclosed the DO NOT COPY file and conveyed to these parties the purpose, intent and desires of the Federal Agencies involved as to the terms of imprisonment that Donoghue was to be subjected to, are partys to the transaction.

In his appeal from the denial of his FOIA/PA request the Director OIP with the United States Department of Justice in Washington D.C. cited in response "28 USC 552(a)(b)(6) refers to personnel and medical files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

Donoghue argues that a signature of an individual on a form, in this case the non-disclosure agreement, cannot be logically construed as a personnel file. And that the identification or title of a Federal Agency, cannot justifiably be classified as a personnel file. And such could never be construed as a medical file. The statute uses the terms "personnel and medical files" in the conjunctive context. The signatures, identifications of the partys involved in that action could never be logically construed as a medical file. This "defense" is overbroad and intentionally used in a ambiguous and vague manner.

The Baldwin County partys are not "personnel" of these Federal Agencies. And Donoghue stated in his appeal that if the medical files/records cited, refers to medical files/records of Donoghue. Then the possession of Donoghue's medical files would constitute a clearly unwarranted invasion of Donoghue's personal privacy. The Director OIP failed to respond to this assertion by Donoghue.

The issue of the non-disclosure agreement was never an issue before this Court and as such there has never been a valid court determination essential to this issue. Therefore this is not subject to issue preclusion regarding the F.B.I. and his claim has never been litigated, and has never been actually decided. And the third party defense fails, because if not for the willingness of the Baldwin County partys to comply with and fulfill the desires of the Federal partys. Donoghue would not have been sentenced to three (3) consecutive Life sentences, two (2) concurrent Life sentences, three (3) concurrent twenty (20) year sentence and a concurrent ten (10) year sentence, with the Life sentences being without parole. They are principal partys.

Additionally whereas the District Court Judge of the District of Columbia never entered a valid determination essential to the prior judgment in the prior case. Stating that he would not address teh merits of the other exemptions, statutes, preclusions, there has never been a valid determination essential to this instant case. Therefore res judicata does not apply.

Regarding the claim that §552(b)(7)(C) to deny a copy of the non-disclosure agreement is mimsplaced and erroneous wherein §552(b)(7)(C) cites"records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (C) could reasonably be expected to constitute an unwarranted invasion of privacy."

Donogue argues that a copy of the non-disclosure agreement would not itself, contain any records or information compiled for law enforcement purposes. Such records or information would be contained within the DO NOT COPY file. And Donoghue did specifically state to the F.B.I. and the Director OIP in his request for information, that he was not seeking copies of the records, documents contained within the DO NOT COPY file.

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

Donoghue had filed a request for information pursuant to the Freedom of Information Act (FOIA) §552 seeking that he was to be provided copies of any records and documents regarding himself. That the N.A.R.A. was to search the following Records Groups - NARA 3 - Donors of Historical Material Files: NARA 7 - Classified Documents Request Files: NARA 8 - Restricted and Classified Records Access Authorization files: NARA 23 - Office of Inspector General Investigative Case files: NARA 25 - Case Management and Reporting Systems.

Donoghue had also in his request cited that in a response to a prior request pursuant to the FOIA/PA, case no:NGC 17-057a that the NARA had informed him "You may seeks judicial review in the District of Columbia, in the United States District Court for the judicial district in which you reside or do businss, or in the judicial district where the records are located - in this instance, in the United States District Court of Maryland."

In this instance, the records Donoghue sought were those that would involve and concern him and investigations that were conducted regarding him by Federal Agencies. In his response/request of April 25, 2022 Donoghue stated to the NARA that the NARA had neglected/failed to inform him as to the mailing address for the facility or facility's where these records are located in Maryland. And, if known, the designation(s) of any indices, systems, files or records groups.

Whereas the NARA failed to respond to his initial request regarding these records groups, that they may have in their possession, or respond to the request of April 25, 2022. Donoghue subsequently submitted two more requests to the NARA, and advised them that they were outside the time period that they are required to respond in. As of this current date, the NARA has still failed or refused to respond.

to his request for information regarding Records Groups NARA 3; NARA 7; NARA 8; NARA 35. And have failed or refused to respond to his request to advise him as to any reason for their failure to respond.

In his request/response of 04/25/2022 Donoghue also stated:

"That if there are indices/indexes required for the NARA to be able to conduct any reasonable search pursuant to the FOIA/PA calculated for the NARA to be able to locate and/identify said same records/documents sought regarding Donoghue or referencing Donoghue. Yet the indices/indexes are not in the possession or control of the NARA, being still in the possession/control of any Federal, State, local or foreign party, individual, agency, bureau or division thereof.

That the NARA is to undertake a reasonable effort to obtain from any said party the indices/indexes and or other identifying information required for the NARA to conduct a search of the same. That the NARA is to provide Donoghue with the name(s) and contact information of the Federal, State, loacl or foreign party, individual, agency, bureau or division thereof that may or does possess and or control the indices/indexes required.

That the NARA is to provide, furnish Donoghue with the dates of any communications that may exist in any format or fascimilie and the content of the same, between any employee of the NARA and or its divisions and any represententative, agent, employee of any agency whether Federal, State, local or foreign charged with the responsibility of investigating or prosecuting a potential violation of law regarding or referencing Donoghue, whether civil or criminal, or regulatory in nature and wether arising by general statute or particular program, statute or reulation, rule or order issued pursuant thereto. Including any documents, rule or order issued pursuant thereto, including letters rogatory - courts of foreign jurisdiction that may exist in any storage medium or fascimilie thereof. "

Donoghue also stated:

"The following terms-definitions apply to this request;
(1) Any ORAL COMMUNICATION which means and includes any conversation, meeting, conference, telephone conversation or telephone conference, including the name, identification of the representative, agent, employee of any agency whether Federal, State, local, foreign regarding the person of Donoghue and any resultant disclosure(s) of any records, documents and/or selected portions therefrom and dates relating thereto.

(2) Copies of any CORRESPONDENCE which means and includes, but not limited to, all letters, faxes, notices, messages or other written communications or memoranda, memorandum or other records of conversations, meetings, conferences or other communications.

(3) The identication of the CUSTODIAN which means the person or entity, whether State, Federal, local or foreign, having possession or coontrol of documents or records regarding or referencing Donoghue, and a request for identity constitutes a request for the person's name and address.

(4) The identification of any documents, records, stating the date, author, and type of document, i.e., letter, memorandum, memoranda, fax, e-mail, that may exist in any format, storage medium, or to provide some other means of indentfying the same and to disclose its present location and custodian. If any record or document was, but is no longer in the possession or control of the MARA state what the disposition was, the date of said disposition and the system of records concerned. "

Donoghue further stated,
"Donoghue asserts that in the NARA's response to this request pursuant to the FOIA 552. That the NARA is to cite the system of records searched, potential volume of such records, the name of the party who conducted any reasonable search calculated to produce any files, records documents sought that can be reasonably segregated and produced is done so. That any response by the NARA is to be supported by sworn affidavit by the party responsible for conducting any search."

Donogue argues that this particular FOIA §552 request was specific as to the Records Groups to be searched, and the particular documents or records he sought to be provided. That the failure by the NARA after multiple requests for the NARA to respond, considering the time period thta has lapsed, is a deliberate refusal to respond on the part of the NARA. Especially in view of the fact that the NARA has previously stated and informed Donoghue in a prior administrative appeal in case no:NGC 17-067a that Donoghue could file suit in "... the judicial district where the records are located-in this instance, in the U.S. District Court of Maryland."

## CONCLUSION

Donoghue has previously asserted that whereas the Defendant(s)/Respondent(s) have relied upon EXECUTIVE ORDER/PRESIDENTIAL ORDER 13526 Sec. 1.7 CLASSIFICATIION PROHIBITION AND LIMITATIONS is applicable and controlling in this instant case wherein it holds:

"(a) In no case shall information be classified, continue to be classified or fail to be declassified in order to (1) conceal violation of law or adminsrative error."

That, therefore the defendant(s), respondent(s) could not fairly or reasonably continue to claim exemptions pursuant to one part of Executive/Presidential Order 13526 in order to refuse to provide information disclosed as Donoghue states it was, then ignore Executive/Presidential Order 13526 Sexc. 1.7(a)(1). Additionally applicable tp this instant case is §552(a)(k)(2) which states:

"Provided however that if any individual is denied any rights, privileges or benefits that he would otherwise be entitled to by Federal Law, for for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source of furnished information to the Government..."

The usage and the context of the word shall in §552(a)(k)(2) is in the imperative context and the same serves the express purpose of an order, a mandate, leaving no discretion as to whether or not an agency wishes to comply.

Donoghue argues that the consequences, "injury" of the disclosure of the contents of the DO NOT COPY composite file to Baldwin County Alabama Circuit Court officials,agents in August 2008, did deny and divest him of his Substantive and Fundamental United States Constitutional rights, privileges, protections and guarantees, when he was undergoinga a State criminal process.

Donoghue has the Substantive Due Process right, that before he is found "guilty" of any alleged criminal conduct, to be first "officially charged/arrested for such allegations. The right to be indicted by a grand jury. The right to be informed of the nature of the charges against him. The right to be able to confront the evidence alleged, the right to call witnesses in his behalf. The right to compulsory process and to confront the witnesses against him. The right to subject the "Government's" case against him to the proving of the adversarial process.

Donoghue has never been arrested, indicted for any alleged criminal conduct by the Defendant/Respondent parties. Donoghue has never been informed as to the nature of any charges, alleged by the Defendant/Respondent parties against him. He has been denied the right to confront any evidence or witnesses against him. He has never been allowedhis right to submit any of the alleged evidence disclosed to Baldwin County Alabama Circuit Court officials/agents in the DO NOT COPY file, utilized to convict and imprison Donoghue. To the proving of the adversarial process.

Donoghue argues that he has a substantive right which prohibits the seizure of his person and imprisonment without a proceeding conducted before a tribunal in accord with the Due Process of Law, pursuant to the 4th Amendment to the United States Constitution. That he has the protection, guarantee and immunity against such conduct which is prohibited by the 4th Amendment.

The the 6th Amendment to the United States Constitution guarantess to Donoghue, as to any citizen, the Substantive Due Process right made applicable to the States pursuant to the 14th Amendment to the United States Constitution. The Substantive and Fundamental right to Equal Protection of he law and Fundamental Fairness. These rights were founded upon the belief, the principle, that a citizen is to be protected from the abuse of the law, by the Government. From the intentional abuse, weilding of the law by those in the position of authority. Therefore, as in this instant case, when the law is used

or abused against a citizen in a manner Fundamentally unfair and Unequal in content and character, in order to imprison a citizen, as in Donoghue's case. Donoghue was denied Equal Protection of the Law, and was denied his right to Fundamental Fairness. The Equal Protection Clause places on onus upon the Government to conduct itself in accord with the Due Process of Law and in a Fundamentally Fair manner.

This conduct by the Defendant/Respondent parties constituted the usurpation of Donoghue's rights, privileges, protections, immunities and guarantees thus violating the Ninth Amendment's prohibition against usurpation and oppression by the Government, whether State or Federal. Donoghue would argue that as a consequence of the conduct of the Defendant/Respondent parties, he was subjected to involuntary servitude to the State, without Due Process of Law, thus violatiing the 13th Amendment's prohibition against involuntary servitude absent Due Process of Law.

These actions by the Defendant/Respondent parties, intentionally, illegally and unconstitutionally subverted the function and character of the Baldwin County Alabama Circuit Court. From a trial court with jurisdictional authority to adjudicate on the issue of guilt or innocence as to the State allegations of criminal conduct, limited to the same, within the realm and sphere of its legislated authority. To an illegal and unconstitutional proxy court. To fulfill the intentions, desires and objectives of Federal authorities.

Donoghue would assert to this Honorable Court that at no point, in any response by the Defendant/Respondent parties, ever denied that they did not participate in any manner to any degree in the disclosing of the contents of the DO NOT COPY file to Baldwin County Alabama Circuit Court officials, agents in August 2008, and for the purposeas Donoghue has presented to this Honorable Court. Whereas in very §552 and §552a request Donoghue cited the facts and circumstances of what transpired in Baldwin County in August 2008 and the sentences imposed in September 2008 as a consequence thereof.

RELIEF REQUESTED

Based upon the foregoing facts and circumstances Donoghue respectfully seeks that this Honorable Court will grant/order the followin relief:

1) That this Court will direct/order the Respondents/Defendants to provide any and all documents/records they possess regarding Donoghue to this Court for an in camera review to enable this Court determine whether or not Donoghuea citizen at home was investigatedby the C.I.A.; and

2) Order or direct the Respondents/Defendants to provide any and all documents/records they possess or control regarding Donoghue; and

3) Order/direct the Respondents/Defendants to respond under penalty of perjury as to whether or not they contributed in any manner to any degree with the compilation of the DO NOT COPY file and the resultant disclosure of tje contents of the same to Baldwin County Alabama Circuit Court officials,agents in August 2008 and the actions associated therewith.

4) That this Honorable Court will grant any and all other relief to which it holds Donoghue is due and entitled to.


Respectfully submitted this the _10th_ day of _January_ 2023.


_James Patrick Doyle_
James Patrick Donoghue AIS #261748
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, Al. 35749


31

## CERTIFICATE OF SERVICE

I James Patrick Donoghue hereby certify that I have served a copy of the foregoing upon - Clerk of the Court - United States District Court - District of Columbia - 333 Constitution Avenue South West - Room 1225 - Washington D.C. 2001 by placing a copy of the same in the Limestone Correctional Facility Institutional Legal Mail System postage prepaid properly addressed prior to the close of the normal business day this the _10th_ day of January 2023.

James Patrick Donoghue
AIS #261748
Limestone Correctional Fac.
28779 Nick Davis Road
Harvest Al. 35749

## AFFIRMATION UNDER PENALTY OF PERJURY

I James Patrick Donoghue hereby attest and affirm under penalty of perjury that the information in the foregoing is true and correct to the best of my knowledge and belief this the _10th_ day of January 2023.

James Patrick Donoghue

32